IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BEVERLY FLORES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 08-CV-0308-MJR |
| FLYING J, INC., a/k/a Flying J Travel ) | |
| Plaza, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

**REAGAN, District Judge:**

Plaintiff Beverly Flores sued Defendant Flying J, Inc. on April 25, 2008. She alleges that Flying J terminated her employment due to her pregnancy and claims that this violates named federal law and unnamed federal and state statutes and case law. The statutes she chose to identify were §§ 703 and 704 of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2, 2000e-3 (2006), and 42 U.S.C. § 1981. Flying J later moved for summary judgment. (Doc. 29.) There are genuine issues of material fact on the gravamen of Flores' case, so the Court will deny the motion in part. Flying J does demonstrate that the auxiliary issues in Flores' case are not supported by the discovery, so the Court will grant the motion in part.

### I.   Standard for Summary Judgment

Summary judgment is appropriate where the pleadings, discovery and disclosure materials on file and any affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.3d 559, 563 (7th Cir. 2009) (citing Fed. R. Civ. P. 56(c)); *accord Breneisen v. Motorola, Inc.*, 512 F.3d 972 (7th Cir. 2008); *Levy v. Minn. Life Ins. Co.*, 517 F.3d 519 (7th Cir. 2008).

In ruling on a summary judgment motion, the Court construes all facts and reasonable

inferences in the light most favorable to the non-moving party. *Lloyd v. Swifty Transp., Inc.*, 552 F.3d 594, 600 (7th Cir. 2009); *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 630 (7th Cir. 2007); *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007).

A nonmovant cannot rest on its pleadings, though; to avoid summary judgment, the non-moving party must provide evidence on which a reasonable fact-finder could find in their favor. *Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). As the Seventh Circuit recently explained:

> [T]he non-moving party must submit evidence that there is a genuine issue for trial. The existence of merely a scintilla of evidence in support of the non-moving party's position is insufficient; there must be evidence on which the jury could reasonably find for the non-moving party.

*Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 531-32 (7th Cir. 2009) (citation omitted) (citing Fed. R. Civ. P. 56(e); *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 694 (7th Cir. 2006)).

## II.  Factual Background

Viewing the discovery and affidavits presented by the parties in the light most favorable to Flores, the non-moving party, the Court assumes the following facts for the purpose of deciding Flying J's motion.

Flying J is based in Ogden, Utah, and operates several truck stops across the country. These truck stops sell fuel and also provide several other amenities geared towards truck drivers and travelers: a restaurant, showers, laundry facilities and a convenience store.

Flying J hired Flores in April of 2006 to work as a cashier in the convenience store of the truck stop in Alorton, Illinois. Her duties included cleaning the store and the area around it, operating the cash register keyboard and serving a minimum of 30 customers in 30 minutes. These duties require her to stand 8 hours at a time, excluding breaks and lunch.

Three months later, Flying J transferred Flores to the same position at the Pontoon Beach, Illinois truck stop. In August, she discovered that she was pregnant and informed the Pontoon

2

Beach stop's general manager, John Mourton, but did not request time off of work at that point. In October 2006, though, she began developing pain in her feet as a complication of her pregnancy. She consulted a physician, who requested that she take the next four days off of work (October 23–26). Mourton approved the leave of absence.

Flores returned to work on October 28, but a few days later she again saw the physician for the same problem. Her physician, Peter Reynolds, gave her a letter to show to her employer, which stated as follows: "Ability to treat is somewhat limited due to pregnancy. Ms. F[l]ores would improve much faster if she avoided prolonged standing. Please provide a stool/chair for her at work for the next 30 days—no standing over 5 minutes."

When Flores presented her physician's restrictions to Mourton, he reassigned her to work in the Country Market restaurant instead of the convenience store. The reason he reassigned her was because it was against policy to have a stool behind the counter in the convenience store because it would interfere with other workers accessing the shelves. By moving Flores to the restaurant, Mourton knew that she would have to move around less and would be able to use a stool at the cash register, which he provided for her.

On November 2, 2006, Flores was taken aside by Mourton and the restaurant manager, Justin Schneider, for an employment counseling session because a large number of restaurant patrons left the restaurant that day without paying for their food. Preventing those walkouts was part of Flores' job as the restaurant cashier. After discussing the write-up, Mourton told Flores that she could not work at Flying J anymore until she had her baby. Mourton told Flores to see if she could go on public assistance until she had the baby. Flores protested, indicating that she wanted to work and needed the money. She also told Mourton that she would have to talk to a case worker to see if it was even possible to go on public assistance. After this discussion, Flores called the case worker that assisted her and her son with obtaining food stamps and state medical benefits. The case worker

3

told her to come in for an interview about the situation and Mourton permitted her to clock-out early for that interview.

At the interview, Flores discovered that she could not go on public assistance, so she called Mourton back an hour-and-a-half later. Mourton said he would look through the handbook and try to get her some sort of medical leave, but this never materialized. During this conversation, Flores insisted on being placed on the schedule again, but Mourton declined, indicating that a subordinate manager, Bill Whitehead, was doing the schedule now and that she had to contact him. She did on several occasions, but Whitehead never returned her phone calls. Flores has not worked at Flying J since the counseling session in November 2006. Mourton later testified that Flores was terminated. He did not characterize the end of the employment as a resignation, voluntary or otherwise. He also indicated that Flores was not terminated on the grounds of her excessive walk-outs, which was the reason for the employment counseling session.

### III.   Analysis

*Pregnancy Discrimination*

Flying J's argument for summary judgment on the pregnancy discrimination claim misses the mark and will be denied.

Termination of employment on the basis of the employee's pregnancy counts as sex discrimination, which means that it is an unlawful employment practice. *See* Civil Rights Act of 1964 § 701, 42 U.S.C. § 2000e(k) (defining "on the basis of sex" to include "on the basis of pregnancy, childbirth, or related medical conditions"); *id.* § 703, 42 U.S.C. § 2000e-2 ("It shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.").

Flying J argues that the Court should examine this case under the framework of *McDonnell*

4

*Douglas Corp. v. Green*, 411 U.S. 792 (1973), which articulates four elements to establish prima facie discrimination under Title VII. *See Geier v. Medtronic, Inc.*, 99 F.3d 238, 241 (7th Cir. 1996) ("To make a prima facie case, a plaintiff must show that she was (1) a member of a protected class, (2) qualified for her position and (3) discharged, and (4) that others, similarly situated but not of the protected class, were treated more favorably." (citing *McDonnel Douglas*, 411 U.S. at 802)). Flying J makes this argument because, it asserts, "Plaintiff does not allege that she has any direct evidence of discrimination." (Def.'s Am. Mot. for Summ. J. 8.) Although establishing a prima facie case would effectively shift the burden of production to Flying J here, Flying J takes this tactic because it argues that Flores cannot establish the second element, that she was qualified for her position. If true, a prima facie case could not be established. The argument that Flores does not allege direct evidence stems, presumably, from Flores' allegation that the termination "was a pretext for unlawfully motivated discrimination, harassment and retaliation" because of her pregnancy. (Compl. ¶ 13.)

*McDonnell Douglas* is not the only way to show discrimination under Title VII. Flores could also present evidence of a discriminatory animus, either "through direct evidence, e.g., an acknowledgment on the part of the employer of discriminatory intent, or—as is more usually the case—by relying on circumstantial evidence, e.g., ambiguous statements or suspicious timing." *Geier*, 99 F.3d at 241. Although circumstantial evidence is the usual way that a plaintiff will have to prove discrimination, the cases do not exclude the possibility that direct evidence will present itself. *See id.* Why the usual cases use circumstantial evidence or the *McDonnell Douglas* factors is simple: most employers would not admit to an employee's face that they are firing the employee because of an unlawful reason.

The facts viewed in the light favorable to Flores paint a different picture. Flores' deposition testimony reveals more than evidence of a pretext. According to her testimony, on the last day Flores worked at the Flying J store, Mourton told her that she could no longer work at Flying J

because she was pregnant. Statements made by employers about pregnancy are probative with respect to discrimination if they are uttered contemporaneously with discharge or are causally related to the discharge. *Geier*, 99 F.3d at 242. This statement was made the same day as the discharge (unlike, say, a misogynistic comment made months before the discharge) and was proffered as the reason that Flores could not work at Flying J. This statement provides direct evidence of pregnancy discrimination. As such, there is no need to consider the *McDonnell Douglas* factors. *See id.* at 241 ("[The Plaintiff] may make a case of sex discrimination in either of two ways. She may present evidence to show that her termination was a result of intentional discrimination. She may demonstrate discriminatory animus through direct evidence, e.g., an acknowledgment on the part of the employer of discriminatory intent, or—as is more usually the case—by relying on circumstantial evidence, e.g., ambiguous statements or suspicious timing. . . . Alternatively, [the Plaintiff] could frame her case under the *McDonnell Douglas* approach . . . ."). The fact that Mourton's deposition indicates a different story on the day of discharge serves to emphasize that there is a genuine issue of material fact.

The evidence regarding the conversation between Flores and Mourton on the last day she worked is in dispute, and what was said is crucial to determine whether she was a victim of discrimination on the basis of her pregnancy. A fact question for the jury arises, precluding summary judgment on Count I alleging a violation of § 703 of the Civil Rights Act.

*Other Claims*

Flores also claims, without stating in a formal count, that both 42 U.S.C. § 1981 and § 704 of the Civil Rights Act entitle her to relief. Flying J is correct that there is no issue of fact and that it is entitled to judgment as a matter of law on those claims.[1]

---

[1] Flores devoted her brief entirely to arguing pregnancy discrimination and never touched any retaliation claim, any claim under 42 U.S.C. § 1981 or any claim under "other applicable civil rights and anti-discrimination laws and violations of

6

A claim under 42 U.S.C. § 1981 is analyzed in the same way as a claim under § 703 of the Civil Rights Act of 1964, *Eliand v. Trinity Hosp.*, 150 F.3d 747, 750 (7th Cir. 1998), with one major difference. The difference lies in what sort of discrimination is protected. Section 1981 prohibits discrimination on the basis of race only, in that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens . . . ." Notably for this case, however, "claims of sex discrimination are not cognizable under § 1981; the section applies only to alleged discrimination on the basis of race or alienage." *St. Louis v. Alverno College*, 744 F.2d 1314, 1317 (7th Cir. 1984) (citing *Runyon v. McCrary*, 427 U.S. 160, 167 (1976); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1259 (7th Cir. 1984)).

Flying J argues that, because on the pleadings and discovery, there is no indication that Flores was discriminated against based on her race. Accordingly, because 42 U.S.C. § 1981 only protects against racial discrimination, that claim must fail. The Court agrees. Flores offered no evidence or argument that she was discriminated against based on race. She offers neither direct nor circumstantial evidence so any claim under 42 U.S.C. § 1981 fails.

The next statute that Flores claims in support of her case is § 704 of the Civil Rights Act of 1964. Section 704 protects from discrimination a person who "has opposed any practice made an unlawful employment practice by this subchapter" or who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Congress's goals in protecting from retaliation through § 704 are materially different from protecting from discrimination under § 703, and the Supreme Court articulated the difference in motivation and effect between the two provisions:

---

state and federal common law." The Court cannot grant summary judgment merely because the nonmovant failed to respond; the Court still needs to assess whether the movant met its burden. *See Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992) ("'[W]here the moving party fails to meet its strict burden of proof, summary judgment cannot be entered even if the opposing party fails to respond to the motion.'" (quoting *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984))); *id.* ("Our law is clear that we will not consider arguments which were not presented to the district court in response to a summary judgment motion. However, . . . it is error to grant summary judgment where it is apparent from the record that there are contested issues of material fact."). In this case, the moving party met its burden.

> The antidiscrimination provision seeks a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender-based status. The antiretaliation provision seeks to secure that primary objective by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees. The substantive provision seeks to prevent injury to individuals based on who they are, i.e., their status. The antiretaliation provision seeks to prevent harm to individuals based on what they do, i.e., their conduct.

*Burlington N. & Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 63 (2006).

Flying J argues that no retaliation evidence appears on the record and that, in addition, it is undisputed that the adverse employment action occurred well before Flores sought the help of the EEOC, so a retaliation claim does not make sense. The Court agrees. No indication appears on the record that Flores sought the help of the government before she was terminated or that she participated in a proceeding before terminated. As such, the Court cannot say that, even in the light most favorable to Flores, she tried to secure or advance enforcement of the Act's basic guarantees and, because of that attempt, an employer retaliated against her. Accordingly, she is not protected by § 704 in this case.

*The Catch-All Clause*

Finally, Flying J attacks Flores' catch-all claim, arguing that because it does not state a claim upon which relief can be granted, it is entitled to judgment as a matter of law with respect to that claim. This catch-all claim is not labeled as a count. Instead, when describing the nature of the action in the complaint, Flores offered several theories of relief. The Court has addressed all of them except for her statement that the action is brought under "other applicable civil rights and anti-discrimination laws and violations of state and federal common law."[2]

Even if the Court assumed that this far-reaching statement does state some sort of claim, it still must be adjudged in favor of Flying J. Flores offers neither evidence nor argument

---

[2] It seems that, by including this statement, Flores was taking the kitchen-sink approach to pleading

supporting any other claim other than § 703 of the Civil Rights Act, so the Court cannot say that she responded, with affidavits or other materials under Rule 56(c), setting forth specific facts showing a genuine issue for trial under some other law or statute other than § 703. Flying J deserves judgment on this aspect of the suit.

### IV.  Conclusion

Flores' claim under § 703 of the Civil Rights Act survives summary judgment but the balance of her case does not. Accordingly, the Court **GRANTS IN PART AND DENIES IN PART** Flying J's motion for summary judgment (Doc. 29). The motion is granted with respect to all claims with the exception of any claim under § 703 of the Civil Rights Act of 1964, which survives.

**IT IS SO ORDERED.**

**DATED March 4, 2010.**

s/ Michael J. Reagan
**MICHAEL J. REAGAN
United States District Judge**